2025 IL App (2d) 240712-U
No. 2-24-0712
Order filed February 26, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 24-CF-2185 |
| BRANDON MARTINEZ, | ) ) ) | Honorable Eun K. Yoon and David Paul Kliment, |
| Defendant-Appellee. | ) | Judges, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not place undue emphasis on 18-year-old defendant's lack of criminal history when it denied the State's request to detain defendant. Affirmed.

¶ 2    The State appeals from the circuit court's order denying its request to deny defendant, Brandon Martinez, pretrial release, pursuant to section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). See also Pub. Act 102-1104, § 70

(eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (setting the Act's effective date as September 18, 2023).

¶ 3                                     I. BACKGROUND

¶ 4      On October 5, 2024, the State charged defendant with possession of a firearm while Firearm Owner's Identification (FOID) card invalid or ineligible (430 ILCS 65/2(a)(1) (West 2022)) (class 3), possession of a firearm with defaced serial number (720 ILCS 5/24-5(b) (West 2022)) (class 3), aggravated unlawful possession of a weapon - use of a weapon loaded - no Firearm Concealed Carry Act (FCCA) license or FOID card (*id.* § 24-1.6(a)(1)) (class 4), aggravated unlawful possession of a weapon - person under 21 years old (*id.* § 24-1.6(a)(2)) (class 4), aggravated unlawful possession of a weapon in vehicle with loaded firearm - no FCCA license (*id.* § 24-1.6(a)(1)) (class 4), and aggravated unlawful possession of a weapon - loaded - no FCCA license or FOID card (*id.*) (class 4).

¶ 5      The same day, the State filed a verified petition to detain defendant, alleging that defendant's pretrial release posed a real and present threat to the safety of any person or the community (725 ILCS 5/110-6.1(a)(1), (6) (West 2022)). On October 6, 2024, a hearing was held on the State's petition. The State proffered the police synopsis, which related as follows. On October 4, 2024, Aurora police investigators conducted a walk-through at a West Aurora High School football game. They were informed by staff that Serafin Castellanos and Julian Cepeda were banned from attending the game. Castellanos and Cepeda were among a group of five males who were walking in the area on Plum Street near the entry of the football stadium. Investigators observed the five males improperly walking in the roadway across Plum Street and west of Commonwealth Avenue. After walking southbound on Commonwealth Avenue, the males crossed Plum Street without using the crosswalk. They eventually approached the intersection of

west New York Street and north Elmwood Drive. Investigators attempted to make contact with the five males after they observed them walking in the middle of the roadway. The males wore all black clothing and black face masks. As Aurora police officer Brandon Hennings exited his squad car, the five males fled on foot, eastbound, on west New York Street. He gave chase, after two of the five males ran toward the rear of 942 West New York Street. Officer Hennings grabbed defendant, age 18, and took him to the ground in the back yard of 942 West New York Street. While taking defendant to the ground, Hennings felt a hard object bounce off his back before defendant hit the ground. After placing defendant into custody, Hennings discovered, a few feet from defendant, a defaced black and silver 40-caliber Ruger firearm. The gun was loaded with six 40-caliber rounds, with no round in the chamber.

¶ 6    The State also proffered that defendant had no criminal history and noted that the present charges were for non-probational offenses. It argued that defendant was dangerous, because he was present near a high school football game where 300 attendees were also present, he had a gun and ran from the police, and, while it was not cold outside, he and the other males wore black face masks. Addressing the gun, the State noted that defendant had an object in his waistband and, while he was being taken to the ground, the gun hit the officer before it hit the ground. The State explained that, although there was no round in the chamber, the gun was loaded with six rounds, uncased, and immediately accessible, and defendant was on a public street, and outside of a high school game. The State also noted that three out of the five males had guns, and all were age 18 and, thus, unable to legally possess a gun. Defendant's gun had a defaced serial number, "so obviously it was not obtained by anyone originally in a legal manner." The State asked that defendant be detained and argued that no conditions, including electronic home monitoring (EHM), could mitigate any danger he posed, because he presently lived at the same address and,

while there, was able to obtain an illegal gun and not be monitored. EHM, it argued, allowed two free days that defendant could be out in the community posing a threat and carrying an illegal weapon.

¶ 7    Defense counsel responded that defendant was a high school graduate, resided with his parents, had no ties to gangs, had no criminal history, and was unemployed. Counsel argued that the State had not established that the proof was evident and presumption great that defendant committed qualifying offenses, where the officer did not find the firearm on defendant's person and it was not clear how a weapon could bounce off the officer's back. The firearm, counsel suggested, could have been on the grass prior to the police chase, the synopsis was not clear if other people were present near where defendant was apprehended, and another person also ran in the same direction. Addressing dangerousness, counsel argued that defendant had no criminal history, and no firearm was allegedly used or threatened to be used, but was "merely possessed." Counsel noted that defendant did not have the financial means to repeatedly attempt to obtain weapons and reiterated that defendant was not a gang member. Finally, addressing conditions that could mitigate any threat defendant posed, counsel suggested EHM. "While he typically in the order would be allowed to leave the home for employment, he's not employed. He's not in school. And so Judge, he would be staying at home." Counsel also noted that the public safety assessment report (PSA) scored defendant low for both new criminal activity and failure to appear.

¶ 8    The State, in reply, addressed EHM, arguing that it would not ensure community safety or prevent defendant from obtaining another gun and go out and "look[ ] for trouble." Also, the gun defendant allegedly carried here was loaded.

¶ 9    The circuit court denied the State's petition. It found that the State had established that the proof was evident and presumption great that defendant committed detainable offenses and that

defendant posed a real and present threat to community safety. As to the latter, the court found that defendant was present near a football game with a group that included two individuals who were banned from the game and improperly walking around and crossing the street. All five wore black face masks and fled when approached by police. The court noted the proximity of the gun when defendant was arrested, which was of "great concern," especially as it was a 40-caliber defaced Ruger with six rounds in the magazine. However, it ordered defendant released, with conditions. The court acknowledged the PSA (scoring defendant a two out of six on the new-criminal-activity scale and one out of six on the failure-to-appear scale), the lack of criminal history, and the absence in the PSA of any recommended supervision level (which noted that, due to lower scores on the risk scales, pretrial supervision was not recommended). The court further noted that, given defendant's age, there was an issue whether 18-year olds' brains are fully developed and whether they make correct decisions, such as following court orders. It determined that, considering the nature of the circumstances, especially the defaced gun, the public event, and the other individuals who were also armed with a firearm, it would place defendant on maximum supervision. The court ordered that defendant be placed on EHM and that he not be allowed to leave his home other than for "medical or court" purposes. The court also banned defendant from being within 500 feet of West Aurora High School, ordered that he have no contact with co-defendants Castellanos or Zavion Lopez, and barred him from possessing any weapons or ammunition.

¶ 10 On October 21, 2024, the State filed a motion for relief, arguing that the circuit court's imposition of release with conditions was erroneous. Specifically, the court, the State argued, failed to consider or incorrectly analyzed that: (1) defendant and the other four individuals were dressed in black and had black face masks; (2) three of the males (*i.e.*, defendant, Castellanos, and

Lopez) were armed with loaded firearms; (3) defendant fled from police; (4) defendant possessed a loaded firearm when he was not legally allowed to have a firearm; and (5) defendant possessed a firearm with a defaced serial number. It urged that defendant was already prohibited from possessing any firearms, thus, the court's condition that defendant not possess any firearm went against the evidence, because he had already (allegedly) disregarded the law. The condition, the State asserted, did not mitigate the serious danger that defendant posed to the community. The State also argued that EHM would not inform police what defendant possessed or prevent him from possessing a firearm or other dangerous weapon. EHM is extremely limited, it noted, and only shows the supervising authority when defendant leaves his home. Further, the court permitted defendant to travel for work, court, and doctor's appointments, and the statute allows at least two days per week of movement, which gave defendant abundant access to the community. Finally, EHM would put defendant back into the environment he was in that made it possible for him to possess a firearm.

¶ 11    On October 24, 2024, a hearing was held on the State's motion. The State argued that the conditions not to possess a firearm and the imposition of EHM did not mitigate the criminal behavior of possession of a firearm. Nor did the conditions mitigate defendant's ability to obtain a firearm, because he was under that prohibition his entire life but still chose to unlawfully possess a firearm. As to EHM, the State argued that it does not track possession or who defendant is with and what they are doing. "These conditions do not mitigate anything." The State also argued that the circuit court focused on only one relevant factor—defendant's lack of criminal history—and ignored the nature and circumstances of the offenses, the weight of the evidence against defendant, and the history and characteristics of defendant (but acknowledging that he was not on probation, parole, or other release at the time).

¶ 12    The circuit court denied the State's motion, finding that defendant had no ties to gangs or the gang community, no criminal history, was 18 years old, and lived with his parents.

¶ 13    On November 22, 2024, the State filed a notice of appeal.  On January 10, 2025, the State filed a memorandum in support of its appeal, and on January 31, 2025, defendant filed a response to the State's memorandum.

¶ 14                                 II. ANALYSIS

¶ 15    The State argues that the circuit court erred in finding that the State failed to meet its burden to show that no condition or combination thereof could sufficiently mitigate the threat to the community posed by defendant's release.  The court, the State asserts, prioritized one subfactor—lack of criminal history—over all other primary statutory factors to be considered.

¶ 16    Where, such as here, the detention hearing was conducted solely by way of proffer and evidence otherwise documentary in nature and where no live testimony was presented, we review *de novo* the circuit court's determination.  *People v. Morgan*, 2025 IL 130626, ¶¶ 51, 54.

¶ 17    Under the amended Code, every person charged with an offense is presumed eligible for pretrial release.  725 ILCS 5/110-2(a), 6.1(e) (West 2022).  The State must file a verified petition requesting the denial of pretrial release, and the circuit court shall hold a hearing on the petition. *Id.* § 110-6.1(a).  When seeking denial of pretrial release, the State bears the burden of proving by clear and convincing evidence that (1) the proof is evident or presumption great that the defendant committed a detainable offense; (2) the defendant poses a real and present threat to the safety of any person, persons, or the community, based on the specific, articulable facts of the case; and (3)

       "no condition or combination of conditions set forth in subsection (b) of Section
       110-10 of this Article can mitigate (i) the real and present threat to the safety of any person
       or persons or the community, based on the specific articulable facts of the case, for offenses

listed in paragraphs (1) through (7) of subsection (a), or (ii) the defendant's willful flight for offenses listed in paragraph (8) of subsection (a)." *Id.* § 110-6.1(e)(1)-(3). Section 110-10(b) provides a list of pretrial conditions that may be imposed. *Id.* § 110-10(b). Conditions that may be imposed include restrictions on out-of-state travel, reporting requirements, restraining orders as to certain people or places, home supervision with or without electronic monitoring, and "other reasonable conditions" as the least restrictive means to ensure compliance with the law. *Id.*

¶ 18    To set appropriate conditions of pretrial release, the circuit court must determine, by clear and convincing evidence, what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). In reaching its determination, the circuit court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* The statute lists no singular factor as dispositive. See *id.*

¶ 19    The State argues that the circuit court erroneously prioritized defendant's lack of criminal history and overlooked or deprioritized primary factors. It contends that most factors cut against defendant based on the evidence presented, including factors that should weigh more heavily than defendant's criminal history. The State notes that defendant is only 18 years old and, due to his age, his lack of criminal history should not be so heavily weighed against other factors, because his criminal history represents a relatively short window of time. It contends that other factors the

court should have given more weight to include the nature and circumstances of the offense, the weight of the evidence against defendant (including evidence sought to be excluded), and the nature and seriousness of the real and present threat to the community's safety. 725 ILCS 5/110-5(a) (West 2022). Addressing the circumstances of the offenses and the nature and seriousness of the offenses, the State contends that defendant poses a very serious danger to not just one person but to the community, where he possessed a loaded firearm at a gathering of over 300 people (which, alone, is extremely dangerous) and where he was with four individuals who were all masked and two of which (Castellanos and Lopez) also possessed firearms. The circumstances showed a tremendously dangerous scenario, the State asserts, involving the potential use of lethal force on a crowd of people. The State also argues that defendant was 18 years old and, therefore, not allowed to possess any firearms.

¶ 20    It also asserts that the conditions the circuit court imposed do not adequately insulate the community from the threat defendant poses. EHM, it contends, does not track defendant's whereabouts or require him to remain confined to his parents' home at all times. Rather, defendant will be free to move about the community two days per week. See 730 ILCS 5/5-8A-4(A-1) (West 2022) ("[a]t a minimum, any person ordered to pretrial home confinement with or without electronic monitoring must be provided with movement spread out over no fewer than two days per week, to participate in basic activities such as those listed in paragraph (A)").

¶ 21    Defendant responds that the circuit court did not err in denying the State's motion to detain him. He notes that he scored low on the PSA and that pretrial services recommended no supervision if he was released. Defendant further notes that the court still released him with maximum supervision and numerous conditions, including confining him to EHM in his parents' home. He was charged with non-violent offenses, he notes, and is a high school graduate with no

criminal background. Defendant argues that the State's assertion that conditions such as prohibiting firearm possession would not mitigate the danger defendant posed because he was under such condition all of his life would lead to the illogical conclusion that no defendant could be released. He also asserts that the State argued at the same time that his lack of criminal history should not be so heavily weighed. Either way, defendant argues, the court's finding that he had no criminal history was accurate and was not given undue emphasis.

¶ 22 Further, defendant asserts that the State discounts the weight of the prosecution. He maintains that he is in a different position than before his arrest, with incentive to abide by court orders, not only to avoid going back into custody but also to reduce his sentencing exposure. Also, EHM returns him to the home he lived in at the time, which had no connection to the outdoor gun possession. The release conditions, defendant argues, including no-contact orders, keep him near his parents and away from negative peer influence. Finally, defendant contends that the State's reference to the nature of the offense cuts against the legislature's contemplation that first-time, non-violent defendants will be reintegrated sooner rather than later. 730 ILCS 5/5-6-3.6 (West 2022) (first time weapon offense program). The court's decision to confine him to his parents' home, with conditions, defendant urges, was not erroneous. He notes that he has attended court with his parents and without violations.

¶ 23 We conclude that the circuit court did not err in rejecting the State's request that defendant be detained. The court did not place undue emphasis on defendant's lack of criminal history. The record does not reflect that the court found that the lack of criminal history was the primary consideration in its decision or that it trumped other factors. Indeed, the circuit court found that defendant's gun possession was of "great concern," and it noted defendant's lack of gang ties, defendant's and his group's presence at a public event, the fact that others in defendant's group

possessed firearms, that defendant had a defaced gun, and that all five males wore masks and fled when approached by police. Also, the court determined that, notwithstanding the PSA's absence of a recommended supervision level and defendant's low risk scores, it would impose maximum supervision conditions.

¶ 24 We reject the State's suggestion that conditions prohibiting possession of firearms, which were in place all of defendant's life, will not mitigate the danger defendant posed. As defendant argues, no defendant could ever be released if we accepted this argument. Given his lack of criminal history, the court could not conclude that defendant had not previously followed court orders. Further, the statute speaks of conditions that will mitigate a threat, not eliminate it, which is, in essence, the focus of the State's argument concerning EHM. 725 ILCS 5/110-6.1(e)(3) (West 2022). And, again, the presumption is that every person charged with an offense is presumed eligible for pretrial release. *Id.* §§ 110-2(a), 6.1(e). The maximum supervision condition that defendant cannot leave his home except for "court and medical," together with EHM, will sufficiently limit defendant's access to the community, and the no-contact orders prohibit interaction with two of the members of defendant's group. Similarly, the prohibitions from being within 500 feet of West Aurora High School or possessing any weapons or ammunition will mitigate the risks defendant poses to the community. The circuit court noted defendant's scores in the PSA and the fact that no supervision was recommended. Nevertheless, the court imposed maximum conditions, specifically noting that defendant is limited to leaving his home only for "court and medical" purposes, recognizing that the circumstances in this case involved a loaded defaced gun near a public event with others who were also armed. We agree with the court's assessment and conditions.

¶ 25                                    III. CONCLUSION

¶ 26    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 27    Affirmed.